UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| In re: | ) | No. 11-01152-PCW |
| | ) | |
| ARNOLD JOHN ALLEN, JR. and | ) | MEMORANDUM DECISION RE: |
| KIMBERLY FAITH ALLEN, | ) | DEBTORS' AMENDED OBJECTION TO U.S. |
| | ) | BANK NATIONAL ASSOCIATION'S |
| Debtors. | ) | AMENDED PROOF OF CLAIM NO. 6 |
| | ) | |

        THIS MATTER came before the court on August 30, 2011 on the Debtors' Amended Objection

to the Amended Proof of Claim of U.S. Bank National Association (Claim No. 6). The court reviewed

the files and records herein, heard argument of counsel, and was fully advised in the premises. The court

now renders its decision.

        The parties to this dispute are the debtors Mr. and Mrs. Arnold Allen ("Debtors") and U.S. Bank

National Association, as Trustee for CSAB Mortgage-Backed Pass-Through Certificates, Series 2006-2

("U.S. Bank"). The Debtors challenge whether under the Pooling and Servicing Agreement dated

September 1, 2006, U.S. Bank, through its purported servicing agent, Wells Fargo Bank, N.A. ("Wells

Fargo"), d/b/a America's Servicing Company ("America's Servicing"), is the real party in interest with

standing to file a proof of secured claim.

        The issue is whether U.S. Bank established it was the "person entitled to enforce" the Debtors'

Note and, therefore, had standing to file the Proof of Claim.

MEMORANDUM DECISION RE: . . . 1

## **FACTS**

The debtors filed a chapter 13 bankruptcy petition on March 9, 2011. On March 31, 2011, Wells Fargo filed a proof of secured claim in the amount of $204,526.95 for money loaned on real property. Wells Fargo was named as the secured creditor and indicated payments should be made to Wells Fargo. On May 20, 2011, Debtors filed an amended objection to that Proof of Claim on the basis that no assignment of the Note or Deed of Trust was attached in the name of Wells Fargo. An escrow account statement by America's Servicing was attached, which did not reference Wells Fargo. On June 7, 2011, U.S. Bank filed an Amended Proof of Claim ("the Claim") identifying itself as creditor through its servicing agent America's Servicing, with payments to be made to that entity.

The loan, which serves as the basis of the Claim, originated on April 24, 2006. The Debtors on that date executed a Promissory Note ("the Note") in the amount of $164,000 in favor of Dream House Mortgage Corporation ("Dream House"). On its face, the Note has an endorsement-in-blank. The Note is secured by a Deed of Trust on the Debtors' house in Newport, Washington ("Deed of Trust"). Mortgage Electronic Registration Systems, Inc. ("MERS") is grantee and nominee for lender Dream House on the Deed of Trust.

On May 31, 2006, Dream House executed a Lost Note Affidavit and Agreement ("Lost Note Affidavit"). That document recites that the original Note has been lost and "[p]ursuant to a Mortgage Loan Sale Agreement dated as of May 3, 2002" between Dream House and DLJ Mortgage Capitol, Inc. ("DLJ"), the Note has been assigned to DLJ.

On September 1, 2006, DLJ entered into a Pooling and Servicing Agreement ("PSA") with U.S. Bank, whereby DLJ, as Seller, transferred the Note to Credit Suisse First Boston Mortgage Securities Corporation, as Depositor, which then conveyed various notes to U.S. Bank as Trustee.

In Section 12.04, the PSA provides:

> It is the express intent of the Depositor, the Seller, the Master Servicer, the Servicers, the Trust Administrator and the Trustee that (i) the conveyance by DLJMC of the Mortgage Loans to the Depositor pursuant to the Assignment and Assumption Agreement and (v) the conveyance by the Depositor to the Trustee as provided for in Section 2.01 of each of the Seller's and Depositor's right, title and interest in and to the Mortgage Loans be, and be construed as, an absolute sale and assignment by DLJMC to the Depositor and by the Depositor to

MEMORANDUM DECISION RE: . . . 2

the Trustee of the Mortgage Loans for the benefit of the Certificateholders. <u>Id</u>. at 162.

Further, Section 2.01 of the PSA states:

> The Depositor hereby sells, transfers, assigns, delivers, sets over and otherwise conveys to the Trustee in trust for the benefit of the Certificateholders and the Certificate Insurer, without recourse, the Depositor's right, title and interest in and to (a) the Mortgage Loans listed in the Mortgage Loan Schedule, including all interest and principal received or receivable by the Depositor on or with respect to the Mortgage Loans after the Cut-off Date and any Assigned Prepayment Premiums, but not including payments of principal and interest due and payable on the Mortgage Loans on or before the Cut-off Date, together with the Mortgage Files relating to the Mortgage Loans, (b) REO Property related to the Mortgage Loans, (c) the Collection Account and the Certificate Account, the Interest Rate Cap Agreements and the Basis Risk Reserve Fund and all amounts deposited therein pursuant to the applicable provisions of this Agreement, (d) any insurance policies with respect to the Mortgage Loans, (e) the Depositor's rights under the Assignment and Assumption Agreement and (f) all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or other liquid property. . . . <u>Id</u>. at p. 53.

> <u>It is the express intent of the parties to this Agreement that the conveyance of the Mortgage Loans by the Depositor to the Trustee as provided in this Section 2.01 be, and be construed as, a sale of the Mortgage Loans by the Depositor to the Trustee.</u> (emphasis added). <u>Id</u>. at pp. 56-57.

"'Mortgage Loans" is a defined term in the PSA at page 32. The term includes those transactions identified in the attached schedule and include the "related Mortgage Notes."

Section 3.01 of the PSA provided that Wells Fargo is the "Servicer, Master Servicer and Trust Administrator" and Washington Mutual Mortgage Securities Corporation and Select Portfolio Servicing, Inc., were "Servicers." No assignment of the Deed of Trust has occurred. Under Washington law, the person entitled to enforce the obligation secured by the Deed of Trust is entitled to foreclosure. The determination of the identity of the "person entitled to enforce" the Note will therefore determine the identity of the entity entitled to foreclose the Deed of Trust.

**ISSUES**

1. Is the Lost Note Affidavit sufficient for enforcement purposes to replace the original promissory note?

2. Was the endorsement on the original Note sufficient under RCW 62.A.3-204?

3. Does a Servicer have standing to enforce the Note?

MEMORANDUM DECISION RE: . . . 3

4. Did each transfer of the Note transfer the right to enforce the Note, ultimately resulting in U.S. Bank having standing to file the Proof of Claim?

### 1. Lost Note Affidavit

RCW 62A.3-309 states that a person not in possession of an instrument is entitled to enforce it if that person was in possession of the instrument and entitled to enforce it when the loss of possession occurred. Dream Homes, the original holder of the Note, lost the original Note as stated in the Lost Note Affidavit dated May 31, 2006. The question then becomes whether any assignee or sub-assignee of a lost promissory note is able to enforce the note based upon a Lost Note Affidavit. No Washington cases discuss the issue of whether the rights in a lost note may effectively be assigned and enforced by the assignee. Cases in other jurisdictions have concluded that the rights under a lost note may be assigned and enforced by the assignee. Bobby D. Associates v. DiMarcantonio, 751 A.2d 673 (Pa.Super. 2000); Atlantic Nat. Trust, LLC v. McNamee 984 So.2d 375 (Ala. 2007) and In re Caddo Parish-Villas South, Ltd., 250 F.3d 300 (5th Cir. 2001).

In this situation, the Lost Note Affidavit satisfies the requirements of 3-309. Having so concluded that the Lost Note Affidavit is an acceptable substitute for the original Note, the standing to file the claim based on that lost Note must then be determined.

### 2. Was the Endorsement In Blank Sufficient?

Debtors allege that the Note did not contain a proper endorsement. The Note, a copy of which is attached to the Lost Note Affidavit, contained two blank endorsements. The first endorsement was included on the Note's signature page. The second endorsement was included on an allonge dated April 28,2006.

The first endorsement states: "Pay to the order of; Without Recourse, BY: /s/, John C. Ponte, President, Dream House Mortgage Corporation" (date of April 24, 2006).

The following endorsement is on a separate page titled "Endorsement of Note," and dated four days later. It reads as follows:

> (Endorser/Beneficiary/Mortgage) transfers all rights accrued or to accrue under said Note and securing in the mortgage, deed of trust or security deed in which the undersigned Endorser is the Beneficiary/Mortgagee and Borrowers are trustors/Mortgagers.

MEMORANDUM DECISION RE: . . . 4

ENDORSER: Dream House Mortgage Corp.
Endorsement Date: April 28, 2006
By: /s/
John C. Ponte
Title: President

Attestation (If Required)

I, Pete Silvestre, the Secretary of Dream House Mortgage Corporation, hereby certify that John C. Ponte is duly elected President of Dream House Mortgage, and has the requisite corporate authority to execute this document and that the signature appearing above is his genuine signature.

Date: April 28, 2006
BY: /s/
Pete Silvestre

Debtors allege that an endorsement in blank must appear on the face of the instrument and not on a separate page. RCW 62A.3-204; 3-205. In Re Weisband, 427 B.R. 13 (Bankr. D. Ariz. 2010), relied upon by Debtors, based its ruling upon an Arizona law and facts which involved a note with an unattached endorsement. The endorsement did not contain any identifying numbers, did not reference the payee, did not reference the note in anyway, and there was no proof that the endorsement was executed at or near the time the note was executed. Those facts alone distinguish it from the case at bar. Most importantly, the endorsement in blank of this Note appears on the face of the Note. The later endorsement on the separate page is superfluous.

The court finds the endorsement of the Note by Dream House as evidenced by the Lost Note Affidavit meets the requirements of the Code.

**3.  <u>Standing of Servicer</u>**

Both U.S. Bank and America's Servicing are represented by the same counsel. The pleadings regarding this dispute state they are filed on behalf of both entities. The Amended Proof of Claim on its face only identifies U.S. Bank. Attached to the Amended Proof of Claim is a page calculating the amounts due listing "Creditor" as U.S. Bank acting through its servicing agent America's Servicing. Thus, it is difficult to conclude which entity is claiming standing to file the claim.

As to America's Servicing, a copy of the PSA designating U.S. Bank as the Trustee was introduced into evidence at the hearing. The PSA does not identify or refer to America's Servicing. It

MEMORANDUM DECISION RE: . . . 5

does, however, identify Wells Fargo and provides at Section 3.01, etc., that the Master Servicer is to administer and enforce the mortgage loans and has authority to foreclose the mortgages, execute satisfaction of mortgages, and take other actions regarding the mortgage loans. "Mortgage Loans" is a defined term which includes the Mortgage Notes. The PSA establishes an agency relationship between U.S. Bank and Wells Fargo. The Declaration of Beverly DeCaro as well as other pleadings indicate that America's Servicing is a d/b/a of Wells Fargo.

If the Amended Proof of Claim was filed by Wells Fargo, d/b/a America's Servicing, that entity is an agent of U.S. Bank. If U.S. Bank is a person entitled to enforce the Note, its agent Wells Fargo d/b/a America's Servicing had standing to file the amended claim. This necessitates a discussion of the ultimate issue presented, is U.S. Bank a person entitled to enforce the Note?

**4.** **Person Entitled to Enforce the Note**

The person liable to pay a promissory note must pay the "person entitled to enforce" the note. RCW 62A.3-412. Payments made to the person entitled to enforce the note discharge and satisfy the duty to pay. RCW 62A.3-602(a). For this reason, the person entitled to enforce the note is the real party in interest for purposes of filing a proof of claim. In In re Veal, 450 B.R. 897, 920 (B.A.P. 9th Cir. 2011), the court stated that ". . . the real party in interest requirement of prudential standing hinge on who holds the right to payment under the Note and hence the right to enforce the Note."

If payment on a promissory note is not made to the person entitled to enforce the note, but to some third party, the payments do not reduce the obligation. The person entitled to enforce the note could take action against the debtor to collect on the note. In order to have finality of any decision regarding the proof of claim, it must be prosecuted by the person entitled to enforce the note.

A note is transferred by physical delivery for the purpose of enforcing the note. RCW 62A.3-203(a). The person to whom the note was transferred and who has possession has the burden of proving that it has possession for the purpose of enforcing the note. The court in Veal, supra, at page 922 stated:

> [I]f a claim is challenged on the basis of standing, the party who filed the proof of claim must show that it is either the creditor or the creditor's authorized agent in order to obtain the benefits of Rule 3001(f).

U.S. Bank and/or its agent, America's Servicing, allege that U.S. Bank is the person entitled to

MEMORANDUM DECISION RE: . . . 6

enforce the Note as the Note was transferred to U.S. Bank as Trustee under the PSA.  As concluded in Veal, supra, at page 911:

> [I]f a holder transfers the note to another person by a process not involving an Article 3 negotiation—such as a sale of notes in bulk without individual indorsement of each note—that other person (the transferee) obtains from the holder the right to enforce the note even if no negotiation takes place and, thus, the transferee does not become an Article 3 "holder." *See* Comment 1 to UCC § 3–203.

At the hearing, U.S. Bank produced the original Lost Note Affidavit and Debtors' counsel had an opportunity to review the original.  U.S. Bank must demonstrate that the transfer to it was for the purpose of enforcing the Note.

### 5. Was the Transfer From Dream House to DLJ for the Purpose of Enforcing the Note?

A transferee cannot obtain greater rights in the Note than the rights held by the transferor. Transfer vests in the transferee "any right of the transferor."  RCW 62A.3-203(b).  Consequently, one must examine the nature of the rights in the Note which were held by DLJ at the time of the transfer to U.S. Bank in September 2006.

The Lost Note Affidavit dated May 31, 2006, states that Dream House, the original note holder, "has assigned all its right, title and interest in and to the Mortgage Loan" pursuant to a Mortgage Loan Sale Agreement dated May 3, 2002.  It further states that the Mortgage Loan is evidenced by the Note. No copy of the Mortgage Loan Sale Agreement was introduced into evidence.  In 2002, Dream House apparently sold promissory notes not then in existence to DLJ.  The Lost Note Affidavit recites "[i]mmediately prior to the assignment by the Seller (Dream House) of its interest in such Mortgage Loan to the Purchaser (DJL), the Seller (Dream House) was the current holder of the indebtedness evidenced by the Mortgage Note."  In 2006, Dream House did sell all rights, title and interest in this particular Note to DLJ.

As no copy of the Mortgage Loan Sale Agreement was produced, the Debtors argue that there is insufficient evidence that the sale or transfer of the Note from Dream House to DLJ was for enforcement purposes.  The evidence introduced is the Lost Note Affidavit executed by Dream House, which recites that Dream House has "assigned all its right, title and interest" in the Note. The agreement

MEMORANDUM DECISION RE: . . . 7

further represents that Dream House has not granted any other person any interest in the Note. Even though this transfer took place four years after the underlying transaction between Dream House and DLJ, the document introduced into evidence acknowledges and recites that all rights under the Note have been transferred to DLJ. This satisfies the burden of producing evidence that the purpose of the transfer was to enforce the Note as "all right" and "all interest" must necessarily include the right to enforce. At a minimum, this evidence shifts the burden of producing evidence to the Debtors to produce evidence casting doubt upon the recitations in the agreement. There was no evidence introduced from which it could be concluded or even inferred that the right to enforce the Note was not included in the transfer of "all rights." Thus, as of the date of the Lost Note Affidavit, the evidence demonstrates that the transfer to DLJ included the right to enforce the Note and that right could have been transferred by DLJ to another.

**6.** **Was the Transfer From DLJ to U.S. Bank for the Purpose of Enforcing the Note?**

As cited above, the PSA provides that the conveyance to U,S, Bank as Trustee was an "absolute sale and assignment" by DLJ. The PSA states that the right, title and interest in the Mortgage Loans listed on the schedule are transferred and assigned, and this particular obligation is listed on the schedule. Section 2.01(b)(i)(A) of the PSA recites that delivery of each original Note or a Lost Note Affidavit has occurred. Section 2.01(d) reiterates that the intent of the PSA is to convey and sell the Mortgage Loans.

In Section 2.06, U.S. Bank acknowledges the assignment and delivery of the Mortgage Loans. There is no evidence which indicates or from which it could be inferred that the transfer of this Note by DLJ was a transfer of less than all rights held in the Note.

**CONCLUSION**

The Court finds that the Lost Note Affidavit is sufficient to replace the original Promissory Note. The endorsement in blank on the face of the Note was legally sufficient pursuant to RCW 62A.3-204. Wells Fargo d/b/a America's Servicing is the agent of U.S. Bank and would have standing to file the claim so long as U.S. Bank is the person entitled to enforce the Note. The transfer of the Note from Dream House to DLJ was for the purpose of enforcing the Note. The evidence introduced by U.S. Bank satisfies its burden of demonstrating that it is the person entitled to enforce the Note. Therefore, U.S.

MEMORANDUM DECISION RE: . . . 8

Bank and/or America's Servicing has standing to file the Proof of Claim. Debtors' Amended Objection (Docket No. 49) is **OVERRULED**. The Amended Proof of Claim filed on June 7, 2011 is proof of a valid claim.

_Patricia C Williams_
Patricia C. Williams
Bankruptcy Judge

09/15/2011 14:35:52

MEMORANDUM DECISION RE: . . . 9